UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-20451-MCALILEY
[CONSENT CASE]

RITA HARMAN,
Individually and on behalf of all
others similarly situated,

      Plaintiff,

v.

TAURUS INTERNATIONAL
MANUFACTURING, INC., and
TAURUS HOLDINGS, INC.,

      Defendants.
_____/

## ORDER GRANTING MOTION TO TRANSFER VENUE

Defendants Taurus International Manufacturing, Inc. and Taurus Holdings, Inc. (together, "Taurus") filed a Motion to Transfer Venue of this action to the Middle District of Alabama. (ECF No. 28). Plaintiff Rita Harman filed a response, and Taurus a reply. (ECF Nos. 36, 38). Having carefully reviewed the parties' memoranda of law, the pertinent portions of the record and the applicable law, for the reasons explained below the Court concludes that transfer is warranted.

### I.    BACKGROUND

Plaintiff's putative nationwide class action lawsuit alleges that certain semi-automatic firearms (the "Class Pistols") that Defendants "designed, manufactured, assembled and marketed" contain a defect "which renders the pistols unreasonably

dangerous and unfit for their intended use." (*First Amended Class Action Complaint*, ECF No. 26 at ¶¶ 1-2). According to Plaintiff, the Class Pistols contain a latent defect which "causes the slide of the Class Pistols to break in half at the ejection port when the Pistol is fired." (*Id*. at ¶¶ 2, 12). At the time the Class Pistol was manufactured and sold, Defendants maintained their headquarters in Florida. (*Declaration of Bret Vorhees*, ECF No. 28-1 at ¶ 3). In 2019, before Plaintiff filed this action, Defendants moved their headquarters to Bainbridge, Georgia. (*Id.*). Defendants no longer maintain any business presence in Florida. (*Id*. at ¶¶ 11-14

Plaintiff, who is a citizen of Alabama, owns a Class Pistol which her husband, Chris Harman, purchased for her in December 2011 from a store in Opelika, Alabama.[1] (ECF No. 26 at ¶¶ 13, 43, 45). Plaintiff alleges that the defect manifested when, on November 27, 2020, Mr. Harman shot her Class Pistol at a local firing range and was injured. (ECF No. 26 at ¶ 47; ECF No. 29-1 at ¶ 25). In February of this year, Mr. Harman filed a personal injury lawsuit against Defendants in the United States District Court in the Middle District of Alabama based upon the injuries he sustained from the allegedly defective Class Pistol. (ECF No. 26 at ¶ 48; ECF No. 29-1 at ¶ 25). That action, which is still pending, alleges the same defective condition that is the basis of this lawsuit. Specifically, Mr. Harman alleges that the Class Pistol (which he calls the "Subject Pistol") is "defective and unreasonably dangerous" because "the slide of the Pistol will break in half at the ejection port when the Pistol is fired." (*See* ECF No. 38-1 at ¶ 22; *compare with* ECF No. 26 at ¶ 2). Five of Mr.

---

[1] Opelika is in Lee County, which is in the jurisdiction of the United States District Court for the Middle District of Alabama. (ECF No. 28 at 4).

Harman's six (6) claims are the same causes of action raised here.[2]

## II. ANALYSIS

Defendants ask this Court to find that venue properly lies in the Middle District of Alabama and to transfer this lawsuit there. They rely on 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." As the movants, Defendants must demonstrate that transfer is warranted. *Perlman v. Delisfort-Theodule*, 451 Fed. App'x 846, 848 (11th Cir. 2012) (citations omitted). "The decision to transfer a case to another district is left to the sound discretion of the trial court[,]" *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) (citation omitted), and should be based upon "an individualized, case-by-case consideration of convenience and fairness." *Clinton v. Security Benefit Life Ins. Co.*, No. 19-civ-24803, 2020 WL 6120565, at *1 (S.D. Fla. June 29, 2020) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

Courts engage in a two-step analysis to determine whether transfer is appropriate. *Osgood v. Discount Auto Parts, LLC*, 981 F.Supp.2d 1259, 1263 (S.D. Fla. 2013) (citation omitted). First, the district court must determine whether the action could have brought in the alternate venue. *Id*. at 1263. The parties agree that Plaintiff could have brought this

---

[2] Both lawsuits bring claims for negligence, strict liability, breach of implied warranty of merchantability, negligent failure to disclose, failure to warn, concealment and misrepresentation, and fraudulent concealment and failure to warn. (*Compare* ECF No. 38-1 at Counts One-Five *with* ECF No. 26 at Counts Two, Three, Five, Seven and Eight).

action in the Middle District of Alabama, (ECF No. 28 at 8-9; ECF No. 36 at 4), which satisfies the first step.

Second, the court must balance the following public and private factors, to determine whether convenience and the interests of justice favor transfer: "(1) the convenience of the witnesses; (2) the location of documents and other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the ability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Osgood*, 981 F.Supp.2d at 1263-64 (citation omitted). I evaluate each of these factors in turn.

  1. <u>Convenience of the Witnesses</u>

The convenience of the witnesses is considered one of the most, if not the most, important factor in the transfer analysis. *Clinton*, 2020 WL 6120565 at *4 (citation omitted); *LaPenna v. Cooper Tire & Rubber Co.*, No. 2:10-cv-1018-MEF, 2011 WL 2669469, at *5 (M.D. Ala. July 7, 2011) ("[T]he *most important factor* in passing on a motion to transfer venue under § 1404(a) is the convenience of the witnesses.") (citation omitted). Courts afford more weight to the convenience of non-party witnesses than the convenience of the parties or party-witnesses. *LaPenna*, 2011 WL 2669469, at *5. When the court evaluates the convenience of the witnesses, it "does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of

the testimony that the witness may provide." *Clinton*, 2020 WL 6120565 at *4 (citation omitted).

Importantly, neither party identifies *any* witnesses located in Florida. Plaintiff does speculate that some of Defendants' unidentified employees involved in the design, manufacturing, and marketing of the Class Pistol "did *not* relocate to Georgia in 2019 when the companies relocated, and instead continue to reside in Florida." (ECF No. 36 at 6). The Court cannot rely upon this guesswork. *See e.g., Trinity Christian Center of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F.Supp.2d 1322, 1327 (M.D Fla. Nov. 3, 2010) (the court disregarded plaintiff's vague and speculative assertion that it "will likely call Florida consumers to testify regarding customer confusion between the parties' marks" when deciding whether to transfer trademark infringement action).

Defendants do identify several non-party witnesses located in Alabama – including Mr. Harman – who have information relevant to this suit. (ECF No. 28 at 10). Plaintiff concedes as much, (ECF No. 36 at 5),[3] but focuses on Defendants' failure to identify witnesses in Alabama with knowledge regarding "[t]he seminal issues in this case [which] revolve around the design, manufacture and marketing of the Subject Pistol." (*Id*). The focus should be, instead, on what we do know. That is, first, as mentioned above, the parties know of no witnesses located in Florida. Second, there are non-party witnesses in Alabama that have material information. And last, Defendants' corporate representatives, along with their current leadership team and employees, are in Bainbridge, Georgia, which is closer

---

[3] (*See* ECF No. 36 at 5) ("[I]t is true that the few witnesses who might attest to the circumstances of Plaintiff's husband's injury resulting from the Subject Pistol's defect reside in Alabama….").

to the Alabama court than this court. (ECF No. 28 at 12, ECF No. 38 at 3). In this calculation, the Court cannot ignore that the proximity of the Georgia witnesses to the Alabama forum enhances the convenience of that forum. *Clinton*, 2020 WL 6120565 at *4 (convenience of witnesses favored transfer where numerous material witnesses were in transferee forum or in states geographically closer to transferee forum than Florida). This is especially true because the Alabama forum would give the Georgia witnesses the option of traveling to court by car, which may be significant in the COVID-19 pandemic.[4] *See Diamond Resorts U.S. Collection Development, LLC v. Pandora Marketing, LLC*, No. 20-cv-80143, 2020 WL 6504627, at *3 (S.D. Fla. June 18, 2020) ("This pandemic has made airplane travel significantly more dangerous. Additionally, the [COVID-19] virus has increased the risk of travel disruptions, making it more difficult to confidently plan future travel. Thus, it is particularly useful for Parties and the witnesses to be within driving distance of the court where their case is heard.").

Taken as a whole, the Court concludes that the convenience of the witnesses favors transfer to the Middle District of Alabama. *See LaPenna*, 2011 WL 2669469 at *5 (the convenience of the witnesses "weighs strongly in favor of transfer of venue" where defendant "has pointed to a large number of non-party witnesses located in [transferee forum] and plaintiff "has not pointed to *any* witness located in [original forum]."); *Diamond Resorts U.S. Collection Development, LLC*, 2020 WL 6504627 at *3 (concluding that convenience of the witnesses supports transfer because majority of witnesses,

---

[4] Defendants state that their headquarters are within driving distance of the U.S. District Court for the Middle District of Alabama. (ECF No. 28 at 12).

including corporate representatives, are located in transferee forum); *Clinton*, 2020 WL 6120565 at *4.

    2.    <u>Location of Documents and Other Sources of Proof</u>

Defendants' documents are at their Bainbridge, Georgia headquarters, (ECF No. 28 at 11; ECF No. 36 at 6), although it is unclear the extent to which they are hard copies or electronically stored. Regardless, the parties agree that the physical location of documentary evidence is largely unimportant given technological advances in electronic document production. *See e.g., Microspherix LLC v. Biocompatibles, Inc.*, No. 11-cv-80813, 2012 WL 243764, at *3 (S. D. Fla. Jan. 25, 2012). Plaintiff's Class Pistol, however, is relevant evidence that is *not* located in Florida. Defendants note: "Plaintiff does not deny that the Subject Pistol is presently in her counsel's safe in Birmingham, Alabama." (ECF No. 38 at 3). It may be cumbersome to ship Plaintiff's Class Pistol to Florida, considering regulations regarding the transportation of firearms and any chain of custody concerns. On this record, the Court concludes that ease of access to sources of proof somewhat favors transfer to the Middle District of Alabama.

    3.    <u>Convenience of the Parties</u>

In evaluating this factor, courts consider "the appearance of employees at court and, to some extent, the appearance of counsel." *Clinton*, 2020 WL 6120565 at *5 (citation omitted). No parties or counsel live or work in Florida. Defendants, their employees, and counsel are in Georgia, and Plaintiff and her counsel live in Alabama. Plainly, it is more convenient for the parties to litigate this case in the Middle District of Alabama, rather than here. Of course, this is a class action and "if the proposed class is certified, plaintiffs will

7

reside all over the country and any two given states will likely be of equal convenience as a forum" *Id*. (quotation marks and citation omitted). At this point, however, it is unknown whether a class will be certified. What is known is that the parties are located closer to the transferee forum, and this favors transfer. *See id*. at *5 (class action transferred to Kansas because it "is a more preferable forum given Defendant's location and all the witnesses who either live in Kansas or live within closer proximity than Florida."). The Court thus concludes that the convenience of the parties favors transfer.

4. Locus of Operative Facts

"The location of operative facts underlying a claim is a key factor in determining a motion to transfer venue." *Clinton*, 2020 WL 6120565 at *6 (citations omitted). This is a products liability action at its core and, therefore, the locus of operative facts is "where the business decisions made by the Defendant relative to the products liability theories of the case occurred." *LaPenna*, 2011 WL 2669469, at *4 (citation omitted). Plaintiff alleges that Defendants manufactured the Class Pistols in and distributed them from Florida. (ECF No. 26 at ¶ 19). Defendants readily admit that they maintained their headquarters in Florida until December 2019 when they moved their operations to Georgia. (ECF No. 28-1 at ¶ 3). It stands to reason, then, that business decisions regarding the design and manufacture of the Class Pistols occurred in Florida for part of the relevant time frame.

However, once Defendants moved their headquarters to Georgia, so too did their business decisions regarding the Class Pistols. According to the Amended Complaint, the Class Pistols, whether manufactured before or after December 2019, had the alleged defect. Thus, the relevant business decisions were made in both Florida and Georgia. "When there

8

are multiple loci of operative facts and no single locus is primary in this respect, courts treat this factor as neutral in the Section 1404(a) analysis." *Clinton*, 2020 WL 6120565 at *6 (citations omitted). I conclude that the fourth factor is neutral.

      5.      <u>Ability to Compel Attendance of Unwilling Witnesses at Trial</u>

As already mentioned, there are several nonparty witnesses in Alabama, such as Plaintiff's husband and the persons present at the shooting range when he was injured, who may have relevant testimony. They are beyond this Court's subpoena power and therefore this Court cannot compel them to appear to testify.[5] Plaintiff does not dispute that these witnesses could be compelled to testify if the case is transferred to the Middle District of Alabama. Plaintiff complains, however, that Defendants have not identified any witnesses who would be unwilling to travel to this forum for trial. (ECF No. 36 at 9). Nonetheless, as another court in this district recently found, "[w]hile neither party suggests that the potential witnesses in this case would be unwilling to appear, this factor favors transfer because most of the potential witnesses are beyond 100 miles from the Southern District of Florida." *Clinton*, 2020 WL 6120565 at *7. Also, importantly, neither party identifies any potential witnesses located in Florida, much less within 100 miles of this Court; thus, the transfer of this case to Alabama would not deprive either party the opportunity to call witnesses to trial. For all these reasons, I conclude that the fifth factor favors transfer.

---

[5] Rule 45(c) states: "A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c).

6.   Relative Means of the Parties

Defendants do not contend that the parties lack the financial means to litigate this case in Florida. Rather, Defendants argue that transfer would save the parties considerable expense because Plaintiff and certain non-party witnesses are in Alabama, and Defendants' employees are closer to Alabama than Florida. (ECF No. 28 at 14). Plaintiff does not challenge this assertion. Instead, she contends that her means to litigate in this forum "should not be a factor in th[e] [transfer] analysis" because she chose to file suit in Florida. (ECF No. 36 at 8). While the parties appear to have the financial ability to litigate in this Court, it is undisputed that it will be less expensive to litigate this case in the Middle District of Alabama. On balance, the Court concludes that this factor is neutral.

7.   The Forum's Familiarity with Governing Law

A forum's familiarity with governing law "is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Clinton*, 2020 WL 6120565 at *7 (citation omitted). Defendants contend that Plaintiff's contract and tort claims are governed by Alabama law. (ECF No. 28 at 16-17). These claims are straightforward and do not raise novel issues. The Court is confident that both this court and the court in Alabama can competently apply Alabama law. Accordingly, the Court concludes that this factor is neutral.

8.   Plaintiff's Choice of Forum

The Court is mindful that a "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Plaintiff's choice of forum, however, is entitled to

10

less weight for two reasons. First, it is not Plaintiff's home forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981). Second, Plaintiff brings a class action. *Moghaddam v. Dunkin Donuts, Inc.*, No. 02-60045-Civ, 2002 WL 1940724, at *2-3 (S.D. Fla. Aug. 13, 2002); *Clinton*, 2020 WL 6120565 at *9. As the United States Supreme Court explained:

> where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

*Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524 (1947). Plaintiff alleges that Defendants distributed and sold the Class Pistols throughout the United States and asks the Court to to certify a nationwide class, (ECF No. 26 at ¶¶ 1, 49); the logic expressed in *Koster* certainly applies here.

Plaintiff asserts that her choice of forum should nevertheless be given substantial weight because "all of Defendants' conduct occurred in this district." (ECF No. 36 at 13). This is not accurate. Plaintiff does not allege that Defendants have ceased manufacturing, distributing, and selling the allegedly defective Class Pistols, nor does she limit the proposed class to the time when Defendants were headquartered in Florida. The alleged misconduct began in Florida and moved to Georgia, and the alleged defect manifested in Alabama.

For the foregoing reasons, the Court affords less deference to Plaintiff's choice of forum.

9. <u>Trial Efficiency and the Interests of Justice</u>

Defendants argue that transfer to the District Court in the Middle District of

Alabama would promote judicial efficiency and reduce unnecessary expense because Mr. Harman's personal injury lawsuit against Defendants is pending there. (ECF No. 28 at 19, ECF No. 38 at 10). Plaintiff contends that "there are material differences in the cases' postures and proceedings," (ECF No. 36 at 13), but does not offer any specifics or explanation. In fact, Mr. Harman's lawsuit involves the same Class Pistol at issue here, alleges the same defective condition, and asserts many of the same causes of action raised in this lawsuit.

With both cases before the Alabama District Court, that Court could elect to consolidate the cases for discovery, which might eliminate duplicative effort, conserve judicial resources, and avoid inconsistent rulings, at least with respect to discovery matters. These are some of the reasons why "[t]here is a strong policy favoring litigation of related claims in the same tribunal." *Mitchell v. Edwards*, No. 6:09-cv-547-Orl-28KRS, 2009 WL 10667876 at *2 (M.D. Fla. Aug. 21, 2009) (citation omitted).

For these reasons, the Court concludes that the ninth factor weighs heavily in favor of transfer. *Mitchell*, 2009 WL 10667876 at *2 (transferring action to forum where related action was pending "to avoid the risks of duplicative litigation, the potential for inconsistent results, and the unnecessary burden on the Court's time and resources."); *Datascape, Inc. v. Kyocera Wireless Corp.*, No. 05-cv-1651, 2006 WL 8411935, at *6 (N.D. Ga. Sept. 12, 2006) (denying transfer where three related lawsuits were pending in current forum because "the Court is of the opinion that the actions should be heard in one forum and consolidated to conserve judicial resources and to save the parties time and expense.").

Having considered all the relevant factors in the transfer analysis, the Court concludes that transfer to the Middle District of Alabama is appropriate "[f]or the convenience of the parties and witnesses [and] in the interests of justice….". 28 U.S.C. §1404(a).

### III. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** that the Motion to Transfer Venue, (ECF No. 28), is **GRANTED**. The Clerk of Court is **DIRECTED** to transfer this action to the United States District Court for the Middle District of Alabama. All pending motions are **DENIED AS MOOT** and the Clerk of Court is instructed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18th day of October 2021.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: Counsel of record